# EXHIBIT B

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**ASHLEY EARY,**

    **Plaintiff,**

v.                                                   Civil Action No. 20-C-837

                                                                     Judge: _____

**ANDERSON EQUIPMENT COMPANY,
and JUDY ANDERSON,**

    **Defendants.**

*To the above-named Defendant: Notice of Process Address*

***Anderson Equipment Company***

~~P.O. Box 339~~
~~Bridgeville, PA 15017-0339~~

Corp. Service Compy
209 West Washington St.
Charleston, WV 25302

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon <u>David M. Adkins</u>, plaintiff's attorney, whose address is <u>300 Prestige Park Drive, Suite D, Hurricane, West Virginia 25526</u>, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within <u>30</u> days after service of this summons upon you, excluding of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the ***Complaint*** and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

                                                     Cathy S. Gatson, Clerk/CB

                                                     Clerk of Court

IN THE CIRCUIT COURT OF __KANAWHA__ COUNTY, WEST VIRGINIA

## CIVIL CASE INFORMATION STATEMENT
(Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

Case No. __20-C-837__

**Plaintiff(s)**

Judge: __Bailey__

Ashley Eary

Plaintiff's Phone: (304) 757-2422

vs.

**Defendant(s)**

Anderson Equipment Company
Name
P.O. Box 339
Street Address
Bridgeville, PA 15017
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

Defendant's Phone:

**II. TYPE OF CASE:**

- [x] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other:
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other:

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [x] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): 11 / 2021

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [x] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language:
- [ ] Other:

Attorney Name: David M. Adkins, Esquire (#9498)
Firm: The Adkins Law Firm, PLLC
Address: Suite 300D, Prestige Park Dr.
Telephone: (304) 757-2422

Representing:
- [x] Plaintiff
- [ ] Defendant
- [ ] Cross-Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff
- [ ] 3rd-Party Defendant

[ ] Proceeding Without an Attorney

Original and __3__ copies of complaint enclosed/attached.

Dated: 09 / 25 / 2020   Signature: _/s/ David M. Adkins_

SCA-C-100: Civil Case Information Statement (Other than Domestic Relations)   Revision Date: 4/2020

**Plaintiff:** Ashley Eart _____ , et al    **Case Number:** _____

**vs.**

**Defendant:** Anderson Equipment Company _____ , et al

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

Judy Anderson
**Defendant's Name**

P.O. Box 339
**Street Address**

Bridgeville, PA 15017
**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: __20__

Type of Service: Personal

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

Defendant's Phone: _____

Days to Answer: _____

Type of Service: _____

SCA-C-100: Civil Case Information Statement-Defendant(s) Continuation Page        Revision Date: 4/2020

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**ASHLEY EARY,**

    **Plaintiff,**

v.

Civil Action No. 20-C-837

Judge: Bailey

**ANDERSON EQUIPMENT COMPANY,
and JUDY ANDERSON,**

    **Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, Ashley Eary, by and through her legal counsel, David M. Adkins, Esquire and The Adkins Law Firm, PLLC, and hereby brings forth this Complaint against the Defendants.

### I.   FACTUAL BACKGROUND

1. The Plaintiff, Ashley Eary, is a resident of West Virginia, residing in Nitro, Kanawha County, West Virginia.

2. Defendant Anderson Equipment Company is a business properly licensed in the State of West Virginia and conducting the sale and rental of heavy-duty equipment from its office located in Charleston, Kanawha County, West Virginia. Upon information and belief, it is headquartered in Bridgeville, Pennsylvania.

3. Upon information and belief, Defendant Judy Anderson is the President of Anderson Equipment Company, and is a resident of Pennsylvania.

4. Upon information and belief, each Defendant was the principal, agent or employee of each other Defendant, and in acting as such principal or within the course and

1

scope of such employment or agency, took some part in the acts and omissions hereinafter set forth, by reason of which each such Defendant is liable to the Plaintiffs for the relief prayed for herein.

5. On or around May 14, 2018, the Plaintiff began working full-time for Defendant Anderson Equipment Company as a warehouse worker assigned to the Charleston business location.

6. Based upon information and belief, she began this employment subject to a 90-day probationary period, which was completed on or around August 12, 2018.

7. As a warehouse worker, the Plaintiff was responsible for a mixture of clerical and labor related job duties. She was frequently required to lift heavy items by herself, if said items weighed 50 pounds or less. Anything above 50 pounds required her to use a forklift.

8. On or around August 27, 2018, the Plaintiff reported to work and was experiencing severe pain in her lower abdomen. The pain worsened until the point that she left work at lunchtime and reported to CAMC Urgent Care in Cross Lanes, West Virginia.

9. While the Plaintiff was diagnosed with a routine Urinary Tract Infection, a CT scan was taken and revealed a large, solid mass attached to the outside of her uterus.

10. Within a week's time, she was seen by a gynecologist, who recommended the immediate surgical removal of the large, solid mass, for fear that the mass may be cancerous in nature and possibly life-threatening. She was granted medical permission to be off work for two weeks and scheduled for surgery on September 11, 2018.

11. During the surgery, it was determined that the large, solid mass was an unusually large uterine fibroid, and was removed for precautionary reasons.

12. After the surgery, the Plaintiff was granted medical permission to be off work for an additional six weeks, which would have expired on or around October 23, 2018.

13. While the Plaintiff spent several weeks concerned for her life and well-being in the latter part of August and the early part of September, she was also continually harangued by her employer during this particularly stressful time in her life.

14. On September 4, 2018, Defendant Judy Anderson sent correspondence to the Plaintiff and advised her that *"[w]e also have not received a doctor's noted or any communication from you or your physician regarding your condition...On or before Friday, September 7, 2018, we will need documentation from your physician that indicates why you have been absent since Monday, August 27, 2018 and when you will be able to return to work in the Warehouse Worker position."*

15. Four days prior to the Plaintiff's scheduled surgery, and with Plaintiff being extremely concerned that the large, solid mass could be cancerous in nature, and thereby possibly life-threatening, she received another letter from Defendant Judy Anderson. Defendant Anderson clearly acknowledged receipt of the *"Work Ability Form and detailed prognosis from your physician dated September 6, 2018. It indicates you are scheduled for surgery on September 11, 2018 and the physician anticipates a recovery period of 6-8 weeks."*

16. Defendant Anderson goes on to note that *"[u]nfortunately, we can't accommodate an absence requiring 8-10 weeks; however, we will grant you an unpaid Leave of Absence through September 28, 2018."*

17. Despite having received detailed medical information from the Plaintiff's physician, clearly explaining that the Plaintiff would be unable to return to work until the latter part of October 2018, Defendant Anderson instead decides that the exact same physician should *"send us an updated other Work Ability Form (enclosed) and a letter stating your prognosis and estimated return to work date..."* during Plaintiff's follow-up visit with the physician on September 27, 2018.

18. To rehash, Defendant Anderson, despite receiving medical documentation to the contrary, decides out of the apparent goodness of her own heart, that instead of allowing the Plaintiff to return to work in the latter part of October (a mere one month later and in accordance with her physician's directives), that she will unilaterally only give the Plaintiff until September 28, 2018 to return to work instead. She also callously reminds the Plaintiff (again---four days ***prior*** to the surgery) that Plaintiff will be *"required to reimburse the Company for the share of the group health plan and insurance premiums paid on your behalf."*

19. At this juncture, not only is the Plaintiff concerned for her life, and possible ability to conceive children in the future, but she is now reminded by Defendant Anderson that despite a medical doctor's advice, she must return to work two weeks post-surgery and that she will also likely be responsible for reimbursing the medical bills paid for on Defendant's behalf.

20. Furthermore, the physician's documentation submitted prior to the surgery specifically notes that "Employee is ***not released for any work*** from 9/11/18 to 10/23/18." She is to undertake *"no strenuous activity, no weightlifting above five pounds and no driving."*

4

21. Despite receiving this documentation, on September 28, 2018, Defendant Anderson sends additional correspondence to the Plaintiff, and notes therein that "*[w]e granted you an unpaid Leave of Absence through September 28, 2018 because that was the date scheduled for your post operation appointment and we hoped that you would be **released to full duty** at that time.*"

22. Defendant Anderson then goes on to note that "*we have carefully reviewed your required restrictions. Based on the information provided, we cannot accommodate these restrictions.... Unfortunately, we must terminate your employment with Anderson Equipment Company effective immediately.*"

23. Consequently, the Plaintiff finds herself 17 days removed from a life-altering surgery and is then informed that she no longer has a job. Notwithstanding that she only needed an additional month of recovery time, it is readily apparent that the Defendants had no intention of keeping Plaintiff employed, but merely used the foregoing correspondence as a pre-text for her termination.

24. Based on the foregoing, the Plaintiff brings forth the following causes of action:

## II.   VIOLATION OF W.VA. HUMAN RIGHTS ACT

25. The preceding paragraphs are hereby realleged and incorporated herein.

26. "To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W.Va. Code, 5-11-9 (1992), a plaintiff must allege the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or

should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation." Syllabus Point 2, <u>Skaggs v. Elk Run Coal Co.</u>, 198 W. Va. 51, 479 S.E.2d 561 (1996).

27. In the foregoing matter, the Plaintiff was rendered disabled by virtue of the surgery to remove a large, solid mass attached the wall of her uterus. The presence of the large, solid mass, and the impact that the surgery had on the Plaintiff created a physical impairment that impacted her ability to perform major life activities for a period of time subsequent to said surgery.

28. The defendants were aware of the Plaintiff's disability by virtue of their receipt and acknowledgment of the previously cited Work Ability Forms submitted by her physician.

29. For the Plaintiff to have returned to work on September 28, 2018, just 17 days post-surgery, she would have required certain accommodations to perform the essential functions of her job.

30. As the Plaintiff's job consisted of both clerical and labor-related tasks, a reasonable accommodation existed in that the Plaintiff could have been assigned solely clerical tasks.

31. By virtue of the receipt of correspondence from the physician and the defendants' correspondence documenting the same, it is obvious that the defendants knew of Plaintiff's needs and accommodations.

32. The defendants failed to make such accommodations, and instead terminated the Plaintiff from her employment.

33. The termination of the Plaintiff was an adverse employment action and violates West Virginia law.

34. Furthermore, as all these actions occurred during the scope of the Plaintiff's employment and the actions committed therein were performed by Defendant's employees, Defendant is vicariously liable for the employees' actions against Plaintiff.

### III. TORT OF OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35. In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Travis v. Alcon Labs., Inc., 202 W. Va. 369, 372, 504 S.E.2d 419, (W. Va. 1998).*

36. An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable. *See Syllabus Point 3, Musgrove v. Hickory Inn, Inc., 168 W. Va. 65, 281 S.E.2d 499 (1981).*

37. While the Plaintiff was in the midst of emotionally dealing with some very serious medical issues during the months of September and October 2018, her employer,

7

through the actions of Defendant Judy Anderson, acted in an atrocious and intolerable manner, by sending several communiques to the Plaintiff wherein Defendant Anderson, among other things, advised the Plaintiff of the following:

(a) That she would need to send immediate verification explaining her absence from work just four days prior to her surgery; (b) that Defendant would not agree to give the Plaintiff a leave of absence to recover from surgery, despite having received formal and documented proof from Plaintiff's physician detailing why the Plaintiff would need such time to recover from her surgery; (c) that she would be required to reimburse the Defendant company for costs related to her health care expenses; (d) that she would need to submit additional documentation to Defendants subsequent to her doctor's visit on September 27, 2018 with a return to work date, despite the fact that Defendants were aware that the Plaintiff was not cleared to return to work until the latter part of October; (e) that Defendant would not accommodate her restrictions set forth by her physician, contrary to established law; (f) that she was terminated less than 17 days after a potentially life-threatening surgery.

38. Instead of expressing one iota of compassion for the Plaintiff, the Defendants instead subjected the Plaintiff to a constant barrage of haranguing communiques, when it was clear that the Defendants had no intention of maintaining Plaintiff's employment.

39. Given the Plaintiff's emotional mindset at this time it was certain or substantially certain emotional distress would result from this conduct.

40. Furthermore, the actions of the Defendants did cause the Plaintiff to suffer emotional distress in such a severe manner that no reasonable person could have been expected to endure it, especially while faced with the possibility of having cancer or having a condition that could have forever barred the Plaintiff from bearing children.

41. As a result thereof, the Plaintiff is entitled to compensatory and punitive damages for such outrageous conduct and behavior.

**WHEREFORE**, based on the facts contained herein and the causes of action set forth in the previous sections, the Plaintiff hereby demands judgment against the Defendants, jointly and severally, for the following:

(1) Compensatory and Punitive damages for emotional distress and mental suffering;

(2) All damages entitled to, including attorney fees, which are permitted as a result of the Plaintiff's claim under the West Virginia Human Rights Act;

(3) For attorney fees;

(4) For lost wages;

(5) The Plaintiff further demands interest on the judgment at the legal rate from the date of judgment; prejudgment interest on Plaintiff's damages as allowed by law; court costs; attorney fees and such other and further relief to which the Plaintiff is legally entitled; and

(6) For any other relief deemed to be just and proper and in accordance with the wishes of the Court.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

ASHLEY EARY,

PLAINTIFF,

By and Through her counsel,

/s/ David M. Adkins

David M. Adkins, Esq.
The Adkins Law Firm, PLLC
W.Va. Bar I.D. # 9498
300 D Prestige Park Drive
Hurricane, WV 25526
Telephone: (304) 757-2422
Facsimile: (304) 757-2432

10



U.S. POSTAGE PAID
FCM LG ENV
SCOTT DEPOT, WV
25560
JAN 22, 21
AMOUNT

1000    25302    **$8.00**
R2305K140923-05

# First Class Mail



300 D Prestige Park Drive
Hurricane, WV 25526



7017 0190 0000 9060 2758

Corporation Service Company
209 W. Washington St.
Charleston, WV 25302